Thank you. Case is submitted. Next case will be 061386 Parkdale Intl v. United States. Mr. Farron. When Parkdale considered importing Canadian products subject to this antediluvian duty order, it had three options. It could request a review by, it could request some administrative review. Second, it could participate in a review requested by the other side. Third option is that it could take advantage of the... If you had asked for an administrative review, you would have gotten Stelco's rate, right? If what? If you had requested an administrative review, you would have gotten Stelco's rate. Why didn't you just do that? No, we would not have gotten Stelco's rate. If we had requested an administrative review, all of Parkdale's entries would have been examined by the Commerce Department. Well, you wouldn't have been in the others' rate anymore, right? That is correct. That's what you're complaining about. Maybe you wouldn't have gotten Stelco's rate. I presume you would have. There's little else that they would have relied on. But one thing's clear, you would have been out of the others' category, right? Certainly would have been out of the others' category, but by no means would it have been... Why didn't you do that? Because it certainly wouldn't have been Stelco's rate. If it were that easy, we wouldn't be here today. What would happen is they would go and examine the entries of Parkdale and compare the price in the home market versus the price in the U.S. market. But you had an administrative remedy you didn't pursue. That's correct, but we're entitled to that option, to the option that we lost. And that's the important option that we lost. Cases say that we're entitled to... Just because we lose one option doesn't mean we're not entitled... Just because there are other options available doesn't mean we're not entitled to the option that we opted for. There's an important reason why we didn't do it, and that's because there are a lot of unknowns out there with an administrative review. One of the problems is that with Stelco, or with... We went through an administrative review. The Commerce Department would have calculated a rate partially based on information that simply wasn't in the possession of Parkdale. Parkdale had no idea what was going to come out of this black box from the Commerce Department. Commerce could have asked for that information. That Commerce could have asked... During the administrative review. Commerce could have asked for the information from Stelco, but that doesn't help Parkdale. And Parkdale needs to make a decision whether to import the merchandise or not. At the end of this process, Commerce could have found out that Stelco was selling everything massively below the cost of production, unbeknownst to Parkdale. And as a result, Parkdale could have gotten a 100% rate at the end of the day based on information that it did not know, and could not possibly have known. And that's crucial at the time that Parkdale entered the merchandise, the fact that they didn't have possession of that information. So it's certainly a risky gamble. The rate might have been lower. The rate might have been higher. But it was a big black box, and Parkdale was entitled to consider the other option, which is to simply not enter the merchandise, or to simply increase the price at which it sold it, so that it would cover the all-others rate. But don't you always have that when you retroactively look at the rates, because the essential date is the liquidation date, not the entry date? I mean, there always can be changes from the time of entry to the time of liquidation. That's correct. There can always be changes in the rate, but we're not asking that the rate stay fixed. What we're asking is the rules for determining the rate stay fixed. When Parkdale went into the game by entering the merchandise, they knew that there were three options. They could either go for the administrative review, or participate in administrative review, or go for the automatic liquidation option. The automatic liquidation option, at the time they entered the merchandise, yielded a rate of 4%, which is the deposit, the amount they deposited that. Now, all of a sudden, that third option goes away, and it means that if there's no administrative review, it's all of a sudden liquidated at 18%. Now, where is the ability of Parkdale, then? They should have made the choice when they entered, right? Before prior liquidation? Because you deposited 4%. They deposited 4%. You could have gone to automatic liquidation at that point. Well, no. You have to wait and find out if somebody requests administrative review. At the end of that time period, you could have automatically liquidated. I'm sorry. I don't understand the question. Isn't there an automatic liquidation? Yes. There is an automatic liquidation option. And the passage of the May 6, 2003 rule says, essentially, that the automatic liquidation option at the deposit rate is out the door for an affiliated reseller. If anybody requests a review, either the reseller or the producer, the only time the automatic liquidation option at the deposit rate occurs is if nobody requests a review, and nobody requests a review of Stelco. Now, in the past, nearly every year, there was a review requested of Stelco. And in every single year, nobody requested a review of Parkdale. So Parkdale had every reason to believe under the old operation of the automatic liquidation rule, which said that if nobody requested a review of Parkdale, then, boom, you get the automatic liquidation at 4.24%. And they had every reason to think that that was at least a possibility. Now, of course, there's nothing guaranteed, but at least it was a possibility. And that was an important option that they were deprived of. And it doesn't matter the fact that there could have been other options available. It's almost banal of us to say— The point that you make, that this is somehow retroactive application of an effective date, that isn't exactly accurate, is it? Because nothing is final until liquidation anyway. In other words, you're arguing now you lost an option. That's different from arguing retroactive application of an effective date, isn't it? It's retroactive in the sense that that option was gone. Well, I understand you're arguing that, but that's different from saying that this is retroactive application of a particular requirement. Because nothing was set until liquidation, right? Well, it's retroactive in the sense that they had already entered the merchandise. The die had already been cast in that respect. And they couldn't undo the entry. It's much different than the cases where they found that no retroactive effect because it would be entirely different if they could have said, Okay, well, now that this new law is passed, we'll just take the merchandise out of commerce. They didn't have that option. The case is not about commerce's right to eliminate the third option. It's only about commerce's application of the May 6th rule to increase it prior to May 6th. Because commerce applied the rule to imports before it published the new rule, the new rule is obviously retroactive. And the question is whether or not it's impermissibly retroactive absent express congressional authorization. Why is it retroactive? That's kind of back to our point. Yes, you have done something which you can't change. But the final application of the rule doesn't occur until liquidation, right? So the rule is not being retroactively applied. You've just lost some administrative options, which, by the way, you could have taken. You could have challenged and been out of the other category had you wished to. So I'm not so sure you lost the option. You say you lost even. Oh, we certainly lost that option. Automatic liquidation is completely off the table at that point. Nobody disputes that. When did you lose that option? We lost that option. The automatic liquidation option was lost by the operation of the new rule. Once they had already entered the merchandise, later they came back and said, well, automatic liquidation, Parkdale, you're not going to be able to get that automatic liquidation if anybody requests a review of either you or Estelco. And Parkdale would have liked to have known that before they entered the merchandise, before they entered in the stream of commerce and committed themselves to the anti-dumping laws in the United States. We're not saying that the duties have to be fixed from now until eternity since they entered the merchandise. But it's not unreasonable to expect that the rules for determining that— Well, but then there would never be a way that you could apply a rule without retroactive application in the sense that you're arguing, because there will always be something in the pipeline whenever you set the effective date, right? Well, it depends when you're talking about a rule. Are you talking about a case-by-case adjudication that commerce makes on the methodology, or are you talking about passage of a new rule by notice and comment? If it's passage by new rule, notice, and comment, that's right. If it's going to affect the importer and it could have possibly affected the importer's decision whether or not to import, then sure, it's going to be retroactive. If you're talking about a case-by-case adjudication, that's a different story because the cases— the Supreme Court cases say that a case-by-case adjudication is by its nature inherently retrospective. It's in retro as opposed to in futuro. Now, looking at the triggering event, and the triggering event is really the key to all of this. The St. Cyr case teaches us the triggering event must be a date where the complaining party has to make a decision. That's why it can't be liquidation date. Because Parkdale is making absolutely no decision at that point. This is some ministerial event further down the line. The Martin v. Haydex and the Fernandez-Vargas case decided by the Supreme Court just this last June say the same thing. Do you want to say your rebuttal? Yes, please. All right. Mr. Silverbrand? Mr. Silverbrand? May it please the Court. Thank you, Your Honors. Commerce's reseller policy as applied in this case is in accordance with law. Contrary to what Parkdale is asserting before this Court, it was never an option for Parkdale to receive the deposit rate as its final liquidation. Was there an automatic rule? There was an automatic liquidation rule, but that wasn't an option for Parkdale to choose. That was a rule which— Well, but no, just a second. When they entered, they entered with the expectation that there was going to be an automatic liquidation rule, right? That was not an expectation that could possibly happen. Why can't they possibly have that expectation when that's been the practice for, according to the record, as long as we could expect it? Because U.S. Steel had the opportunity to request a review of Parkdale's entry. Any interested party— Yes. I went over that with him, if you'll recall. Why didn't you ask? But that's a different question from what we're talking about now. Did they not enter with an automatic liquidation rule in place? Yes, Your Honor. You went over him why he didn't ask, but there's also the opportunity for U.S. Steel, the defendant intervener here, to make that request. Therefore, Parkdale could not have had the expectation that nobody else, even if they knew they would not request a review, they did not know that another party would not request a review. But didn't they know that if nobody requested the review, it would be automatic? No. If they were unhappy with this policy, which they knew was in effect when their opportunity in August of 2003 arose to request an administrative review, they could have requested that review. They could have requested a review, gone through the administrative process, and after that process, they would have received an individual rate. We do not know what that rate would be because the information required to set that rate is not before Commerce unless they request a review. Therefore, Commerce has this reseller policy. So you're saying because they thought there might have been something that could have happened because they were thinking of making a policy change, they entered with notice? They entered with notice that there could be a policy change. There could be, might have been, could have been if they ever happened, but they didn't know, did they? They entered with the expectation. The rule of automatic liquidation was in place when they entered, right? Yes, but they were not entitled to it. Yes, but why aren't they? Why doesn't that mean things changed to their detriment upon this rule being administered? First of all, we don't know that it's to their detriment. Had they requested a review, they might have had a lower rate. We've been over that. The question is what is the effect of the loss of the automatic liquidation? Is the effect of that a retroactive application of this rule or not? No, because the degree of connection between the operation of the new policy and the relevant past event is the second part of the test enunciated by this Court in Princess Cruz's. That connection in this case is at August 2003 when Parkdale, domestic interested parties, and Commerce could have initiated reviews for Parkdale's entries. That is the relevant event we must look at in this case because those entries, Parkdale had no right under any law, under any precedent of this Court, the Supreme Court, or the lower court to expect that its rate would not change after entry of its merchandise. When an importer imports into the United States, until liquidation occurs, they know that the assessment rate which was applied, the deposit rate which was applied to their entries is not final. It's not until liquidation that that ultimate liquidation rate is set, and that's borne out in many cases before this Court and consolidated. But if they lose one of their options during that process by the change in the policy… Again, it's not an option per se because they never had the right to expect that if they did not request a review, their entries would be automatically liquidated. They merely could hope that nobody else would request a review and then possibly they would receive, if that occurred, they would receive the deposit rate. But that was the expected policy, is that without a requested review they were going to get the automatic rate? That's what they claimed. The entry rate. That's what they claimed it was. However, their comments sent to Commerce in April 2002 demonstrate differently. Moreover, if they were unhappy, they clearly had knowledge… You keep wanting to come back and say, well, they should have done this or they should have done that. Looking at it, not in the context of this case, but anyone entering prior to this rule would have expected to get the automatic entry amount absent some administrative request, right? And that disappeared. Any reseller for which the manufacturer had no knowledge, that's correct, right? Yes. That's correct. However… So isn't there a loss of some option which they had a right to expect at the time they entered? They entered with certain expectations that are frustrated in process. I disagree with the characterization that it's an option. Yes, this policy did change. However, it was never an option for them to choose. Let's not call it an option. It's an absolute fact without administrative review they would have, prior to this rule, received the entry rate, right? Under Commerce's previous policy, yes, Your Honor. They lost that. So it frustrated their expectation. No, again, because no importer is entitled to expect that their final assessment… Wouldn't perhaps be subject to an administrative review. But we've gone over that ten times. The question is, didn't they lose something? No, because again, it's not only that the entries will be possibly subject to an administrative review. The precedent is very clear that until liquidation, an importer does not have any given right to any specific rate. That rate is not determined until it's not final, until liquidation occurs. So they had no right to rely on your policy that was in effect of automatic entry rate. Not after… Your policies are completely irrelevant then. No, Your Honor. If Commerce had acted inconsistently with an established policy before May 2003, then they would have a right to challenge Commerce's policy as the company did in Consolidated. That is the Consolidated case, and they lost because Commerce had a consistent policy previously. However, in this case, because they're not entitled to any specific review, and Commerce provided notice not only in the May 2003 publication of the amended reseller policy, but also in the August 1, 2003 publication of the opportunity to request a review, Commerce specifically stated if a reseller is not reviewed and the manufacturer did not have knowledge of their entries, that reseller's entries will be deposited at the all others rate. That all others rate was established in the original anti-dumping duty investigation. That was not a new rate which was established in this review. They knew what that rate was going to be, and they also knew that if they did not request a review and nobody else requested a review, they would be subject to that rate. So you're saying they were on notice then as of May 6, 2003 when the final rules were published? That's the latest their notice could have been, Yes, Your Honor. That is when the policy officially changed. They had notice as of that date in any future administrative review requests, excuse me, in any future administrative reviews, if no request was made to review those entries and the manufacturer did not report that knowledge, those entries would be liquidated at the all others rate. So between May 6, 2003 and August 1, 2003, they could have made a decision as to whether or not an administrative review should have been taken? Yes, until August 31, 2003, which was the last date they requested an administrative review. For these reasons, we ask that you affirm the decision and report the ruling. Thank you, Your Honor. Thank you. Mr. Gersh. May it please the Court, I am Jeffrey Gersh of Skadden, R.T. Paragon, on behalf of the United States Steel Corporation. The Department of Commerce properly applied its reseller policy to all merchandise entered by Parkdale during the period of review, including merchandise that entered prior to the publication of the May 6, 2003 reseller policy. In so doing, the Department properly determined that the application of that policy to such entries did not constitute a retroactive application of a regulation or a rule. Now, to determine whether a regulation or a rule has been applied retroactively, the Court must determine whether it attached new legal consequences to events completed before its enactment. The Court must also determine whether the party claiming retroactivity reasonably relied on prior law. Now, Parkdale cannot satisfy either of these requirements. Now, the key to determining whether the reseller policy attached new legal consequences to events completed before it was issued is to determine whether the conduct that triggered its application occurred before or after its effective date. Parkdale claims that the entry of subject merchandise was the applicable triggering event because that was the event that established its anti-dumping duty liability. However, the reseller policy does not have any effect whatsoever on the entry of subject merchandise by a reseller, and Parkdale has not shown otherwise. Instead, the sole purpose and function of the reseller policy is to determine the quantum or amount of the anti-dumping duties that will ultimately be assessed on a reseller's entrance. In turn, the quantum or amount of anti-dumping duties is not established until the final liquidation of the reseller's entrance. Therefore, the event triggering the application of the reseller policy is not the entry of subject merchandise by the resellers. It is the ultimate liquidation of those entries. In fact, it is telling that the reseller policy is being implemented in this case through the Department's liquidation instructions, and that Parkdale itself is challenging the liquidation instructions on that very basis. Now, although Parkdale has made a meager attempt to distinguish the travonal case that was decided by this court and the civil case decided by the CIT, the fact is that those cases are directly on point here. Under the decisions in those cases, liquidation clearly is the triggering event here, and the application of the reseller policy to entries made before but liquidated after the effective date of the policy does not constitute a retroactive application of a regulation or a rule. Now, counsel for Parkdale has claimed that the liquidation cannot constitute the triggering event for the application of the reseller policy because it does not involve any action or decision being made by the importer. First of all, that argument flies in the face of this court's decision and the CIT's decision and the travonal and the civil cases. But in any event, the fact is that Parkdale could have taken action to avoid the application of the oil on this rate to its entries under the reseller policy. It could have requested and participated in an administrative review. Parkdale and the other resellers were informed early and often of the reseller policy and of the need to request and participate in an administrative review if they believed that the rate to be assessed on their entries under the reseller policy did not accurately reflect their pricing practices. They were informed of this in the notices of the proposed policy issued in 1998 and 2002 and the final policy issued on May 6, 2003 and the August 1, 2003 notice of opportunity to request an administrative review in this very case. Parkdale clearly had the opportunity to ask for and participate in an administrative review if it believed that the oil on this rate did not accurately reflect its pricing practices. And the oil on this rate was only applied if it did not request such a review. In other words, Parkdale clearly could have taken action to affect and control its anti-dumping duty rate. However, it made a choice. Parkdale made a choice not to do so. So the bottom line here is that the Department is not attaching any new legal consequences to the entries subject to merchandise by the resellers. The only new legal consequences are being attached to the liquidation of the entries made by the resellers. Now, Parkdale also cannot show that it reasonably relied on the Department's prior practice with respect to resellers. Parkdale claims that it entered its subject merchandise with the expectation that the cash deposit rate would be the liquidation rate and that that expectation changed only upon the May 6, 2003 publication of the reseller policy. There are three fundamental problems with this plan. Mr. Garish? Yes. One question. Could U.S. Steel ask for administrative review after August 1, 2003? No. Well, it could have asked for an administrative review of Parkdale up to the deadline for requesting a review, which in this case was September 2, 2003. So why is that a different date than the U.S. review? Well, the August 1, 2003 date was the notice of opportunity to request a review. Issued by Commerce. That's correct. And the September 2nd date? Well, it was the next business day after the last day of August. Of August 31. That's correct. And that was the deadline for requesting a review. By others than Parkdale? That's right. Parkdale could have requested its own review at that time as well. What about U.S. Steel? Yes. Both U.S. Steel and Parkdale could have requested a review. Within that time period? That's correct. Parkdale had that option. It failed to do so. The department's application was positive. It was not retroactive. It should be impalpable. Okay. Thank you. Mr. Kern? I think the really important point for this court to keep in mind is all the parallels between this case and the Supreme Court case of St. Cyr. The St. Cyr case teaches us that the triggering event must be a date where the complaining party has to make a decision. The Martin v. Haydix and the Fernandez-Vargas cases decided by the Supreme Court say the same thing. Why? Because the retroactivity analysis is a functional analysis. In other words, this court first has to determine what right the plaintiff was deprived of and then work backwards to determine what the triggering event was. Here, Parkdale was deprived of the third legal option, the right to take advantage of the automatic liquidation option at the 4% rate. The date of entry is a logical triggering event for that analysis. Why? Because it was the only act Parkdale could take to position itself for automatic liquidation at the deposit rate. It doesn't matter the fact that it could have taken administrative review because that decision point was whether to take an administrative review. They had to make a decision at the time of entry whether or not there was a possibility whether they could go for the automatic liquidation option. That decision point was at the time of entry, not at the time of requesting administrative review. After the time of entry, the die was already cast. They were already subject to the anti-dumping duty laws. They were subject to what they knew was a changeable situation by just entering. They were given a notice beginning in 1998, the possible change, and then for five years that was on the books. You got an opportunity to comment on what you took in 02. There was nothing surprising about this. Well, it was surprising to Parkdale that they would be replying retroactively. And I think it's very dangerous for this court to hold that they should be held on notice based on a proposed rule because that would, in effect, mean that you're giving the proposed rule effect because you're essentially- Well, the proposed rule was just reemphasizing what they should already have known when they What the proposed rule changed- Regulatory change. The proposed rule, the notices leading up to the May 6th notice simply said that they were considering changing the automatic liquidation option, essentially taking that away from Parkdale. And Parkdale has a right to expect at the time that it enters the merchandise that whatever governing law the Congress Department uses for determining anti-narking duties is set at the time that it enters the merchandise because it no longer has that option once it enters the merchandise. Now, the triggering date can't possibly be the date of liquidation because that event is, again, a ministerial act by customs, not a decision point for Parkdale. That date, in fact, hasn't even come yet because the entries still haven't been liquidated. So if the liquidation date were the trigger date, then tomorrow Congress could try out a rule stating that if nobody requests an administrative review, then the importer would be liable for 100% duties, and that would still apply to Parkdale's 02 and 03 entries. That can't possibly be correct. It's irrelevant that Parkdale could have requested its own review because Parkdale still lost an important right. Remember, they had three options. They lost one of their three options. And it's very important because in St. Cyr, the fact that Parkdale had no guarantee of automatic liquidation doesn't matter any more than it mattered in St. Cyr the fact that the alien may or may not get discretionary relief from the Attorney General. They lost an important option. Was the automatic liquidation a vested right that Parkdale is now claiming? It could never be changed by Congress? The right to automatic liquidation? Well, I think the court shouldn't even go down the road of the vested rights analysis because that's unhelpful as a lot of the cases have indicated that it's not an issue of determining what's a vested right or what's not a vested right. But you're claiming it like a vested right. But you had that right at that particular point in time and it's vested. Well, I don't want to get lost in the terminology about what's a vested right or what's not a vested right. But Parkdale was entitled to know at the time it entered its merchandise, the time that it had to decide whether or not to subject itself to the body of laws of the United States, the anti-dumping laws. It had a right to know what the rules of the game would be. They thought that one of the rules of the game was that if nobody requested administrative review, as nobody had ever done in the past. All right. I think we've got it. Thank you very much. Case is submitted.